UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TINA BEELER,

          Plaintiff,

                                      Case Number 08-13085-BC

v.                                      Honorable Thomas L. Ludington

AMERITECH SICKNESS AND
ACCIDENT DISABILITY PLAN,

          Defendant.
_____ /

**ORDER GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT ON THE ADMINISTRATIVE RECORD, DENYING PLAINTIFF'S MOTION FOR JUDGMENT, AFFIRMING DEFENDANT'S DETERMINATION, AND DISMISSING COMPLAINT WITH PREJUDICE**

At all times relevant to this case, Plaintiff Tina Beeler was a participant in a short-term disability ("STD") benefits plan, an employee welfare benefits plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq., administered by Defendant American Sickness and Accident Disability Plan ("Defendant" or "the Plan"). Under the Plan, Plaintiff was approved for benefits from May 3 to May 23, 2007; denied benefits from May 24 to July 8, 2007; and approved for benefits from July 19 to July 22, 2007. On July 17, 2008, Plaintiff filed a complaint in this Court, seeking review of Defendant's denial of benefits for the period from May 24 to July 8, 2007. The Court has reviewed the parties' submissions and finds that the relevant law and facts have been set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, Defendant's denial of benefits will be affirmed.

I

Plaintiff has been employed by AT&T since June 5, 2000, as a service representative. Def. Br. 1. Defendant describes the service representative position as "a sedentary job that involves working on a computer and speaking to customers on the telephone, although occasionally face-to-face contact may be required at the customer's premises." *Id.* In large part, the position entails recommending AT&T products and services to customers and resolving billing disputes. Plaintiff emphasizes that the position is "demanding" and requires significant mandatory overtime commitment. Pl. Br. 7.

Under the Plan, a "disability" is defined as "a sickness or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last . . . job with or without reasonable accommodation. . . ." Tr. 5. During the relevant period, Plaintiff suffered from depression and anxiety. Compl. ¶ 8. Plaintiff contends that she was disabled, within the meaning of the Plan, based on her depression and anxiety from May 24 to July 8, 2007.

The notes of Anne Olsen, a licensed social worker, reflect that Plaintiff contacted Ms. Olsen on April 24, 2007, through Delta Psychological & Neurobehavioral Services; Plaintiff reported to Ms. Olsen that she "lost it" at work, threw things, and was unable to function. Tr. 106. Ms. Olsen's notes dated April 30 reflect that Plaintiff was experiencing suicidal thoughts and intensifying depression. *Id.* These notes were provided to Defendant by Ms. Olsen on May 1. Apparently, Plaintiff's absence from her job began on April 26, after she suffered the "breakdown" described to Ms. Olsen. Tr. 105, 123.

On May 1, Defendant sent Plaintiff a letter informing her that medical information substantiating her claim for benefits from May 3 to May 23 was due by May 18. Tr. 111. The letter

explained that under the terms of the Plan, disability benefits did not become payable until May 3, after a seven-day "waiting period." *Id.* At that point in time, it was estimated that Plaintiff would be able to return to work by May 24. Tr. 123. On May 4, Defendant approved the payment of benefits for the time period from May 3 to May 23. Tr. 121.

On May 16, Defendant received medical treatment notes dated May 9 from Michael Wolfe, a social worker filling in for Ms. Olsen while she was out of the office, Tr. 126, and dated May 12 from Dr. K. J. Raval. Tr. 128. Mr. Wolfe's notes reflect that Plaintiff was worried about returning to work and reported that she was having a "total shut down" and a "terrible memory." Tr. 126. Dr. Raval's notes reflect that Plaintiff reported being "unable to concentrate" and that Plaintiff was "vegetatively depressed." Tr. 128. Dr. Raval also noted that Plaintiff had "once again relapsed into a major episode of depression," but that Plaintiff had not been seen by himself or Ms. Olsen since January 2006. *Id.* Dr. Raval's notes reflect that Plaintiff was not experiencing any side effects from the medications she was taking for depression, anxiety, and insomnia. *Id.* His notes reflect that Plaintiff did not have suicidal or homicidal ideation or psychotic symptoms, was "alert and appropriately oriented," and "seems to be able to take care of activities of daily living fairly well." *Id.*

On May 25, Defendant notified Plaintiff that benefits were denied from May 24 until her eventual return to work. Tr. 133. The same day, Plaintiff requested an appeal of the denial. Tr. 135. In her faxed request for an appeal, Plaintiff contended that Defendant should have contacted Mr. Wolfe for information regarding her claim. *Id.* Apparently, Defendant referred Plaintiff's file to a an independent physician advisor, Dr. Daniel Harrop, for review. *See* Tr. 34-40. Defendant scheduled a telephonic consultation between Dr. Harrop and Mr. Wolfe for May 23 at 2:20 p.m., Tr.

34, but the consultation never took place. Tr. 37. Dr. Harrop's report reflects that he attempted to contact Mr. Wolfe at 1:20 p.m. Tr. 38. The record reflects that Mr. Wolfe called Defendant at about 1:40 p.m. to state that he was available sooner than 2:20 p.m., and that Mr. Wolfe called again at about 3:55 p.m when he did not receive the scheduled call from Dr. Harrop. Tr. 37. Dr. Harrop ultimately produced a report on May 24, concluding that the information in Plaintiff's file did not "objectively support the need for off work status during the time in question." Tr. 39.

On June 7, Defendant received treatment notes from Mr. Wolfe, dated May 30, and from Ms. Olsen, dated June 6. Tr. 139. Mr. Wolfe's notes reflect that Plaintiff reported memory loss, agitation, loss of concentration, migraines, and sleeplessness. *Id.* Ms. Olsen's notes reflect that on June 6, Plaintiff appeared with a "flattened affect." *Id.* Ms. Olsen noted that Plaintiff "continues to struggle cognitively" and "becomes excessively anxious if she has to make phone calls or talk to strangers." *Id.* Ms. Olsen's notes further reflect that Plaintiff's "anger and rage are diminishing but focus and attention are still broken up." *Id.*

On June 7, Ms. Olsen faxed Defendant a letter describing Plaintiff's symptoms and treatment. Tr. 137-38. Ms. Olsen stated that Plaintiff "has debilitating migraines, sleep disturbance, a near complete withdrawal and isolation, a tendency to obsessiveness and perfectionism. Her memory is poor, she has poor concentration and attention." Tr. 137. Ms. Olsen described Plaintiff's breakdown as occurring "across all areas of functioning," including emotional, cognitive, and physical. *Id.* Ms. Olsen indicated that Plaintiff was struggling to interact with others, was slow to process input, had short term memory impairments, did not have much momentum, and could not complete projects. *Id.* Ms. Olsen recommended that Plaintiff not return to work until at least June 23, after an appointment with Dr. Raval. *Id.*

On June 9, Defendant confirmed to Plaintiff that it had received her request for appeal and notified her that she would receive a written response by July 9. Tr. 141. On June 11, Defendant sent Plaintiff a letter, acknowledging that it had received her request for additional time to submit medical records. Tr. 147. Defendant advised Plaintiff that if she did not provide additional information by July 10, Defendant would continue with the review of Plaintiff's appeal based upon the information contained in her file.

On June 13, Ms. Olsen faxed to Defendant a handwritten note and treatment notes from June 12. Tr. 145-46. In her handwritten note to Defendant, Ms. Olsen stated that Plaintiff was "beginning to show some initial signs of stabilization," and that she expected Plaintiff to return to work on June 25, with limited working hours. Tr. 145. The treatment notes reflect that the frequency of Plaintiff's migraines was decreasing, her appetite was appropriate, and that her sleep/wake pattern was stabilizing. Tr. 146. However, the notes also reflect that Plaintiff had a migraine that day and reported not being able to read or remember what she read. *Id.*

On June 14, Plaintiff faxed a letter to Defendant, stating that she wanted to "rescind my right to the appeal process and allow my original claim to go back to my original case worker . . . for further review." Tr. 148. Apparently, Plaintiff successfully withdrew her appeal and Defendant reviewed her claim with any new information that Plaintiff had provided. Defendant sent Plaintiff a letter, dated June 13, denying benefits from May 24 through her eventual return to work. Tr. 149.

The denial letter acknowledged that Plaintiff had been seen by Mr. Wolfe for symptoms of depression and anxiety. *Id.* The letter further noted that the independent physician advisor attempted to contact Mr. Wolfe on May 23 for a scheduled telephonic consultation, but was not able to make contact. *Id.* As discussed above, Plaintiff contends that Defendant's physician never

attempted to contact Mr. Wolfe.  The denial letter reflects that the independent physician advisor reviewed Mr. Wolfe's medical notes, and found that the documentation "lacked clear indicators to substantiate severity."  *Id.*  Defendant also acknowledged receipt of additional medical documentation from Ms. Olsen on June 7.  *Id.*  The denial letter noted that the additional medical documentation addressed Plaintiff's subjective complaints, but "did not support reversal of the denial."  *Id.*

On June 25, Ms. Olsen faxed to Defendant a handwritten note and treatment notes from that day and June 18.  Tr. 163-64.  In her handwritten note to Defendant, Ms. Olsen stated that she was expecting Plaintiff to return to work on July 9, with limited working hours.  Tr. 163.  Ms. Olsen's treatment notes from June 18 reflected that Plaintiff appeared tense and agitated that day, but with a flat affect and monotone voice.  Tr. 166.  Ms. Olsen noted that Plaintiff expressed feelings of "frustration and anger," and a "strong current of barely controlled anger."  *Id.*  Ms. Olsen's treatment notes from June 25 reflect that Dr. Raval made significant changes to Plaintiff's medications and that Dr. Raval was addressing Plaintiff's anger and agitation.  Tr. 164.  Ms. Olsen noted that Plaintiff reported that she was very reactive to any increase in stimuli and that Plaintiff had violent ideation. *Id.*  Ms. Olsen also faxed treatment notes from Dr. Raval, dated June 23.  Tr. 165.  His notes reflect that Plaintiff was under a lot of stress.  *Id.*

On June 29, Defendant sent Plaintiff another letter, noting that it had received additional information from Dr. Raval on June 26.  Tr. 168.  The letter provided that the information received did not alter the previous decision to deny benefits.  *Id.*

On August 9, Plaintiff initiated an appeal of the denial of benefits.  Tr. 179 - 246.  Plaintiff attached a letter written by her to the appeal form, along with medical records that had already been

provided to Defendant and new records. Specific new medical records included Ms. Olsen's treatment notes from July 3, July 18, and August 1. Tr. 200-01. Ms. Olsen's July 3 notes reflect that Plaintiff appeared "physically uncomfortable" that day, possibly due to rheumatoid arthritis. Tr. 200. The notes reflect that Plaintiff reported continuing difficulty with "word finding and memory." *Id.* Ms. Olsen's July 18 notes reflect that Plaintiff had returned to work, but that she remained "uncomfortable and anxious." Tr. 200. The notes further reflect that Plaintiff reported "a continuing sense of being overwhelmed." *Id.* Ms. Olsen's August 1 notes reflect that Plaintiff reported suicidal thoughts and that she had a "strong sense of being trapped." *Id.*

On August 17, Defendant sent Plaintiff a letter acknowledging her request for an appeal. Tr. 251. The letter provided that Plaintiff would receive a written response by September 30. *Id.* On August 31, Defendant sent Plaintiff a letter upholding its denial of benefits for the period from May 24 until her return to work, which had been on July 9. Tr. 86. The letter provided that Defendant and an independent physician advisor, Dr. Robert G. Slack, had reviewed medical records from Ms. Olsen, Mr. Wolfe, and Dr. Raval, ranging in date from April 24 to August 1. Tr. 251. The letter explained that Dr. Slack had spoken to Ms. Olsen regarding Plaintiff, and that Dr. Slack had determined that it would be expected that Plaintiff's performance would be less than normal during a period of depression, but that there was no evidence that she lost the option or choice of performing the essential requirements of her occupation. *Id.*

The report produced by Dr. Slack included additional details not repeated in the denial letter. Tr. 79-81. For example, Dr. Slack reported that when he spoke to Ms. Olsen, Ms. Olsen "pointed out at some length that [Plaintiff] perceives her work situation as being unfair and overly demanding with long hours and lack of supervision." Tr. 79. Dr. Slack reported that Ms. Olsen "had no

additional clinical information outside of that recorded in the medical record itself." *Id.* Dr. Slack acknowledged that the medical records reflected "depressed mood and some agitation," but not "major mental status abnormalities." *Id.* Dr. Slack noted that Plaintiff was reportedly angry about the denial of benefits and that she had complained of suicidal ideation. *Id.* However, he also noted that no suicidal plan or behavior was ever noted, nor was Plaintiff ever hospitalized. *Id.*

Meanwhile, on July 25, Defendant sent Plaintiff a letter acknowledging that it had been notified that Plaintiff had a "relapse absence from work due to an illness or injury." Tr. 265. Apparently Plaintiff had returned to work on July 9, but was absent again on July 19. Tr. 86, 274. The letter provided that benefits may be payable from the first day of absence because it was considered an "immediate relapse." Tr. 265. In other words, a seven-day waiting period was not imposed. *Id.* The letter advised Plaintiff that the medical information to substantiate her disability was due by July 31. *Id.*

On August 7, Defendant sent Plaintiff a letter denying benefits for the period from July 19 to July 22. Tr. 286. The letter stated that Plaintiff had not provided any medical information to Defendant. *Id.* The letter stated that Defendant had attempted to contact Plaintiff on July 25, August 1, and August 2, to remind Plaintiff of the need to submit medical information to substantiate her claim. *Id.* Nonetheless, on August 9, Defendant sent Plaintiff a letter approving benefits for the period from July 19 to July 22. Tr. 296. The basis for the approval is not clear from the record. The approval may have been based on medical records sent to Defendant from Dr. Roy Small on August 7. Tr. 279-85. The records include treatment notes from July 19, reflecting that Plaintiff was diagnosed with a urinary tract infection. Tr. 281-85.

II

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties agree that this Court should review Defendant's denial of benefits under the arbitrary and capricious standard. This highly deferential review is appropriate when the ERISA-regulated plan at issue clearly grants discretion to the plan administrator. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595, 597 (6th Cir. 2001).

The Sixth Circuit has described the arbitrary and capricious standard of review as "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotations and citation omitted). When applying this standard, the Court must determine whether the administrator's decision was reasonable in light of the available record evidence. Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision was neither arbitrary nor capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Yet the deferential standard of review does not equate with using a rubber stamp – a court must review the quantity and quality of the medical evidence on each side. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

A decision reviewed according to the arbitrary and capricious standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*,

929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). A court generally considers only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. *Id*. The court's review thus is limited to the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998).

In applying this standard of review, the Supreme Court has refused to give preferential weight to the opinion of a claimant's treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) (refusing to import the "treating physician" rule from social security cases to ERISA decisions). "[C]ourts have no warrant to require [ERISA plan] administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id*. at 834 (footnote omitted). Thus, a court may not deem a conflict between a plan's physicians and a claimant's treating physician a per se arbitrary and capricious decision.

Yet, "[b]y the same token, [a court] may not arbitrarily repudiate or refuse to consider the opinions of a treating physician." *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 671 (6th Cir. 2006) (citing *Nord*, 538 U.S. at 834). Reliance on one medical opinion over another does not necessarily discredit an administrator's decision, nor is the use of an independent review of a medical file inherently objectionable. *Evans*, 434 F.3d at 877 (internal citations omitted). Thus, both the opinion of a treating physician and the conclusions of any independent reviewers of a claimant's medical file can be utilized by a plan administrator to reach a benefits determination.

Courts may also consider several other factors when reviewing an ERISA plan administrator's benefits determination. Performing a file review when a plan provides a right to an independent medical examination can raise a question about the thoroughness or accuracy of a benefits determination. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). Further, that an independent medical expert failed to rebut the contrary findings of a claimant's treating physician has served as one factor in a court's review of a benefits determination. *See Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 510 (6th Cir. 2005) (citing *Nord*, 538 U.S. at 834).

### III

Plaintiff argues that Defendant's denial of benefits was arbitrary and capricious for two main reasons. First, Plaintiff argues that Defendant's denial of benefits was arbitrary and capricious because Defendant relied on the opinion of the independent physician advisor, Dr. Harrop, who did not speak to Mr. Wolfe and was not provided with all of Plaintiff's medical records. Plaintiff relies on *Cooper v. Life Insurance Co. of North America*, 486 F.3d 157 (6th Cir. 2007), for the general proposition that a denial of benefits is arbitrary and capricious when a reviewing physician does not contact a treating physician as instructed by the relevant plan administrator. However, there is a significant procedural difference between this case and *Cooper*. In *Cooper*, the court of appeals found that the administrator's initial denial of a claim was not arbitrary and capricious when the claimant and treating physicians did not provide certain medical information requested by the administrator. 486 F.3d at 165-67. Nonetheless, the court found that subsequently, the administrator's denial of benefits at two levels of appeal resulted in arbitrary and capricious

decisions when the administrator relied on reports of reviewing physicians who did not contact the claimant's treating physicians despite explicit instructions to do so. *Id.* at 167-70.

Notably, in this case, Defendant only relied on Dr. Harrop's report for further review of the initial denial of benefits on or about June 13, 2007. The record does not reflect that Defendant relied on Dr. Harrop's report for the denial of benefits on appeal. Rather, Defendant submitted Plaintiff's file to another independent physician advisor, Dr. Slack, for review. Significantly, Dr. Slack contacted Ms. Olsen, who was Plaintiff's primary treatment provider. Thus, any colorable argument that Defendant's decision was arbitrary and capricious because Defendant relied on Dr. Harrop's report is undermined by the fact that Defendant did not do so on appeal and instead relied on the report of another physician who had contacted Plaintiff's primary treatment provider. Likewise, any argument that Defendant's decision to deny benefits was arbitrary and capricious because Dr. Harrop did not review all of the medical evidence is undermined by the fact that Defendant did not rely on Dr. Harrop's report on appeal.

Plaintiff also argues that Defendant's denial of benefits was arbitrary and capricious because Defendant only engaged in a "cursory review which disregarded abundant medical evidence," did not interview or examine Plaintiff despite reserving the right to do so, *see* Tr. 14, and relied solely on the conclusions of Dr. Slack. While Plaintiff emphasizes certain medical information in the record that could support a finding that Plaintiff was disabled, a review of the entire record does not lead to the conclusion that Defendant's decision was not "rational in light of the plan's provisions." *Smith*, 129 F.3d at 863. As of May 12, Dr. Raval's notes reflect that Plaintiff was not experiencing any side effects from the medications, Plaintiff was not having suicidal or homicidal ideation or psychotic symptoms, and Plaintiff was "alert and appropriately oriented," and "seems to be able to

take care of activities of daily living fairly well." Additionally, Dr. Slack acknowledged that while Plaintiff's "performance would be less than normal," because of her depression, this did not mean that she could not perform the duties of her job.

IV

Based on the entirety of the record, and the findings above, Defendant's decision to deny Plaintiff benefits was supported by "substantial evidence," and was not arbitrary and capricious. *See Baker*, 929 F.2d at 1144.

Accordingly, it is **ORDERED** that Defendant's motion for entry of judgment on the administrative record [Dkt. # 12] is **GRANTED**, and that Plaintiff's motion for judgment [Dkt. # 13] is **DENIED**.

It is further **ORDERED** that Defendant's determination is **AFFIRMED** and that Plaintiff's complaint [Dkt. #1] is **DISMISSED WITH PREJUDICE**.

> s/Thomas L. Ludington
> THOMAS L. LUDINGTON
> United States District Judge

Dated: July 21, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 21, 2009.

> s/Tracy A. Jacobs
> TRACY A. JACOBS